PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY SLOAN, ) | |
| ) | CASE NO. 1:14CV02769 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| FRESENIUS MEDICAL CARE N.A., *et al.*, ) | |
| ) | |
| Defendants. ) | **MEMORANDUM OF OPINION AND** |
| ) | **ORDER** [Resolving ECF No. 16] |

Pending is Defendants' Motion for Summary Judgment ("motion"), ECF No. 16. The motion is fully briefed, *see* ECF Nos. 19 and 20. For the reasons that follow, the motion is granted.

**I. Background**

Defendant Fresenius Medical Care N.A. ("Fresenius") hired Plaintiff as a Patient Care Technician at a dialysis center on November 5, 2012. Opposition, ECF No. 19 at PageID #: 238. Plaintiff concedes, "As [she] had previously been a certified Patient Care Technician, she was aware at the time of her hire at Fresenius that she would need to gain her dialysis technician certification [(also known as BONENT Certification)] within 18 months, unless the time requirement was put on hold." *Id*.

"In March 2013, [Plaintiff] learned that she was pregnant and immediately notified multiple Fresenius employees about the pregnancy." *Id*. Plaintiff alleges that she began

(1:14CV02769)

experiencing negative comments about her pregnancy from Fresenius's management. *Id.* at PageID #: 239. For example, Plaintiff asserts that she heard an assistant clinical manager at Fresenius remark that Plaintiff looked to be further along in her pregnancy than she had revealed and "was pregnant way before she even took this job." Pl. Dep., ECF No. 16-1 at PageID #: 158, pages 154–55.

In late March 2013, Plaintiff began experiencing complications as a result of her pregnancy—namely, Braxton Hicks contractions. Opposition, ECF No. 19 at PageID #: 239. The Complaint describes these contractions as "contractions not related to labor that occur as early as six weeks after conception." Complaint, ECF No. 1 ¶ 17. These contractions occurred while Plaintiff was present in the workplace at Fresenius. *Id.* ¶ 16. Plaintiff alleges that Defendant Alissa Misley, who was in a supervisory position over Plaintiff, *Id.* ¶ 7, immediately sent Plaintiff home as a result of the Braxton Hicks contractions, despite Plaintiff's assurances that she could continue to work effectively. *Id.* ¶ 19.

Plaintiff visited her physician due to the contractions, and the physician determined, in writing, that Plaintiff's pregnancy was a "high risk pregnancy." Opposition, ECF No. 19 at PageID #: 239–40; Pl. Dep., ECF No. 16-1 at PageID# : 142, pages 90–91. The physician also imposed the following restrictions on Plaintiff: "(1) no lifting greater than 25 pounds; (2) no prolonged standing of more than 2 hours without a 15 minute break; (3) no work shift over 8 hours in a 24 hour period; and (4) no work over 40 hours in a 7 day period." Opposition, ECF No. 19 at PageID #: 240; Pl. Dep., ECF No. 16-1 at PageID #: 140, page 85.

(1:14CV02769)

Plaintiff alleges that after she provided the physician's note to Fresenius, "she began to experience further harassment from Fresenius employees in regards to her pregnancy and newly disclosed complications." Opposition, ECF No. 19 at PageID #: 240. Specifically, Plaintiff alleges, "They told me that I was a liability, and [] a lot of the nurses would tell me they weren't labor and delivery nurses and they didn't want to have to deliver my baby on the floor and that I couldn't be there if I was having contractions." Pl. Dep., ECF No. 16-1 at PageID #: 137, pages 70–71. Plaintiff asserts that more than one of Fresenius's charge nurses also made these comments, in addition to stating that it seemed early in the pregnancy for Plaintiff to be having Braxton Hicks contractions. *Id.* at PageID #: 165, pages 182–85. Plaintiff also asserts that she was written up for leaving work early, even though she had been forced to do so. *Id.* at PageID #: 161, page 169. Plaintiff met with Fresenius's regional manager regarding the write-up and the alleged workplace discrimination. *Id.* at PageID#: 136, pages 67–68.

On April 18, 2013, Fresenius informed Plaintiff that the restrictions were "not acceptable for [Plaintiff] to continue working at the dialysis center," and that the light duty requested could not be accommodated. *Id.* at PageID #: 141, page 87. At her deposition, Plaintiff conceded that the employee handbook says that the job requires prolonged periods of standing and some lifting, but felt that her restrictions could be easily accommodated. *Id.* at PageID #: 144, page 88. She stated, "I didn't stand for long periods of time and I didn't have to lift like the handbook says. That was rare." *Id.* Plaintiff claims that after receiving her physician's notice, Defendants immediately forced her to take leave under the Family and Medical Leave Act ("FMLA") "four and a half months early." Complaint, ECF No. 1 ¶ 22; Opposition, ECF No. 19 at PageID #: 246.

3

(1:14CV02769)

At that time, Plaintiff asserts, "Defendant[s] specifically assured [her] that they would contact the administrators of the BONENT Certification in order to pause her 18 month clock." Complaint, ECF No. 1 ¶ 28. This "assurance" was derived from Plaintiff's conversation with Fresenius's regional manager and a charge nurse, during which they allegedly told her, "You're going on leave today. Don't worry about anything. When you come back, you're going to start where you left off." Opposition, ECF No. 19 at PageID #: 242l; Pl. Dep., ECF No. 16-1 at PageID #: 149, page 121. In Plaintiff's view, "[T]hat meant, instead of it expiring on May 5th, it should have expired four and a half months later. So I was under the impression I had still had four and a half months after May 5th." Pl. Dep., ECF No. 16-1 at PageID #: 149, page 121.

Plaintiff asserts that when she returned from leave on August 26, 2013, she "continued to rely on [the] assurance that she could "start where she left off." Opposition, ECF No. 19 at PageID #: 243. Plaintiff concedes, "On December 3, 2013, [she] received a letter from [Fresenius's Education Department] that listed her deadline for receiving the dialysis certificate as May 5, 2014, the original date given to her that represented 18 months after her start date." *Id.*; Pl. Dep., ECF No. 16-1 at PageID #: 150, page 122–23. Plaintiff asserts that she spoke with the charge nurse who had earlier made the "assurance" that the 18-month clock would be paused. Pl. Dep., ECF No. 16-1 at PageID #: 150, page 123–24. The charge nurse allegedly told her, "Fresenius sends these papers out. They automatically print this out and send it, and she told me that 'Don't worry about it. You're fine. You'll be fine,'" *Id.* Plaintiff concedes that she did not contact Fresenius's Education Department in regards to this letter. *Id.*

4

(1:14CV02769)

On March 17, 2014, Plaintiff received another notice from Fresenius's Education Department, informing her that her temporary dialysis certification would lapse on May 5, 2014. Opposition, ECF No. 19 at PageID #: 243–44. Plaintiff discussed the notice with an assistant manager, who allegedly told her, "You should be fine. This is just they automatically send this out based off of your dates in the computer." Pl. Dep., ECF No. 16-1 at PageID #: 150, page 125. Plaintiff admits that she "ignored" the letter and did not contact the Fresenius education coordinators who had signed the letter to confirm the earlier alleged assurances. Id.

Finally, after receiving a notice from the Fresenius Education Department on April 4, 2014, indicating that Plaintiff's temporary dialysis certification would lapse in 30 days, Plaintiff "decided to contact the Fresenius Education Department to confirm that [she] was receiving truthful information from her superiors." Opposition, ECF No. 19 at PageID #: 244. Plaintiff describes her conversation with the Education Department representative as follows: "[H]e went on to tell me . . . [t]hey never should have told me that I was being put on hold because I was supposed to be the one to put it on hold. And that was the first time I had anybody tell me that. I was supposed to be the one to do it." Pl. Dep., ECF No. 16-1 at PageID #: 151, page 128. The representative informed her, "You're gonna have to take it by May 5th or you won't have a license." Id. But Plaintiff did not submit an application to sit for the BONNET exam until late April. See id., page 127. And by then, it was too late to meet the cutoff. See id., page129 (Plaintiff began the application process "immediately" after the April 4, 2014 notification, but an applicant generally needs 45 days to complete the process). Consequently, Plaintiff's temporary certification lapsed on May 5, 2014. Id. at PageID #: 133, page 57. On that same date,

5

(1:14CV02769)

Defendant Misley informed Plaintiff that her employment was being terminated because she did not have the requisite certification.  *Id.*, pages 56–57.

s	Plaintiff filed the instant lawsuit, challenging the termination of her employment as unlawfully discriminatory.  *See* Complaint, ECF No. 1.  Specifically, Plaintiff asserts the following four counts: (1) retaliatory discharge in violation of the FMLA, (2) unlawful pregnancy discrimination, (3) wrongful termination based on disability discrimination, and (4) intentional infliction of emotional distress ("IIED").  *Id*.  Defendants filed the motion for summary judgment now under review, seeking judgment on all four counts.  *See* ECF No. 16.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute.  An opposing party may not

(1:14CV02769)

simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

### III. Discussion

Defendants move for summary judgment on all counts asserted in the Complaint. *See* Memorandum in Support, ECF No. 16. Below, the Court analyzes the motion as to each count.

**A. Count I: FMLA Retaliation Claim; Claims Against Defendant Misley**

Count I of the Complaint asserts, "After [Plaintiff] was approved for qualified FMLA leave, Fresenius retaliated against her by terminating her employment . . . [,] in violation of 29 U.S.C. § 1615(a)." ECF No.1 ¶¶ 47–49. Defendants argue, "Because Plaintiff was admittedly

7

(1:14CV02769)

not eligible for leave under the FMLA at the time she applied for it, she is not entitled to the statute's protections and her retaliatory discharge claim under the FMLA is invalid as a matter of law." Memorandum in Support, ECF No. 16 at PageID #: 107–08. "Even if Plaintiff were covered by the FMLA," Defendants assert, her claims would fail because she cannot establish the requisite "causal connection between her exercise of FMLA rights and the termination of her employment." *Id.* at PageID #: 108. In her Opposition, Plaintiff does not refute or even address these arguments. *See generally* Opposition, ECF No. 19.

Defendants also argue, "Plaintiff asserts all four of her legal causes of action against [Defendant] Misley . . . . However, Plaintiff's deposition testimony makes perfectly clear that her claims against [Defendant] Misley are baseless and Misley should never have been named as a defendant in this lawsuit." Memorandum in Support, ECF No. 16 at PageID #: 115 (citing Plaintiff's testimony that she did not consider Defendant Misley's treatment of her to be "bad or discriminatory"). In her Opposition, Plaintiff also does not refute or address this argument. *See generally* Opposition, ECF No. 19.

Because Plaintiff has failed to meet her burden in opposing summary judgment on these claims, Plaintiff has abandoned these claims and waived any argument concerning dismissal of them. *Hicks v. Concorde Career Coll.*, 449 F. App'x. 484, 487 (6th Cir. 2011) (finding that "[t]he district court properly declined to consider the merits of [the plaintiff's] claim because [the plaintiff] failed to address it in . . . his response to the summary judgment motion"); *see also, e.g.*, *Hadi v. State Farm Ins. Cos.*, 2:07-CV-0060, 2008 WL 4877766, at *13 (S.D. Ohio Nov. 12, 2008) (finding the plaintiff's failure to respond with any evidence supporting his negligent

8

(1:14CV02769)

infliction of emotional distress claim "apparently concedes that summary judgment is proper on this count.").

Accordingly, for the reasons articulated by Defendants, there are no triable issues of fact as to Plaintiff's FMLA retaliation claim, nor as to Plaintiff's claims against Defendant Misley. *See* Memorandum in Support, ECF No. 16 at PageID #: 107-109; 115-16.

### B. Count II: Unlawful Pregnancy Discrimination

In Count II, Plaintiff alleges that Defendants discriminated against her and terminated her employment based on her pregnancy, in violation of R.C. § 4112.02. Complaint, ECF No. 1 ¶¶ 56–60. To establish a *prima facie* case for pregnancy discrimination under Ohio law, Plaintiff must show that "(1) she was pregnant, (2) she was qualified to perform her job, (3) she was subjected to an adverse employment decision, and (4) there was a nexus between her pregnancy and the adverse employment decision." *See Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir. 2008); *see also* R.C. § 4112.01(B).

Plaintiff concedes that she knew at the time of her hire that she was required to obtain dialysis technician (or BONENT) certification within 18 months after her start date at Fresenius, *i.e.*, by May 5, 2014. *See* Opposition, ECF No. 19 at PageID #: 237. It is also undisputed that Plaintiff failed to obtain the requisite certification by that date. *Id.* at PageID #: 238. Therefore, Plaintiff was not qualified to perform her job at the time of her termination. Plaintiff objects to this conclusion, arguing, "The very reason [Plaintiff] ultimately lost her certification, and thus was terminated, was that [Plaintiff] was forced to go on leave four and a half months early against her will and was given promise after promise that she could 'start where she left off.'"

9

(1:14CV02769)

*Id.* at PageID #: 245. Other "promises," allegedly made by a Fresenius regional manager, charge nurse and assistant manager, were: (1) "Don't worry about it. You're fine. You'll be fine;" and (2) "You should be fine." Pl. Dep., ECF No. 16-1 at PageID #: 150, pages 124–25.

 The statements Plaintiff relied upon in delaying her pursuit of the requisite dialysis certification are ambiguous, at best. Even construing these facts in the light most favorable to Plaintiff, it would not be reasonable to find that the alleged assurances amounted to a guarantee that the 18-month clock for Plaintiff to obtain certification would be paused during her pregnancy leave. It seems doubtful that Plaintiff would have even relied on such noncommital statements when she knew that the certification was fundamental to maintaining her employment at Fresenius. Plaintiff's reliance, if any, was certainly not reasonable.

 It also does not appear that the reliance was detrimental. During the eight-month period between Plaintiff's return from leave and the cutoff to obtain certification, Plaintiff could have pursued the certification. *See* Opposition, ECF No. 19 at PageID #: 243 ("[Plaintiff] returned to work on August 26, 2013."). There is no evidence in the record that anyone at Fresenius attempted to dissuade Plaintiff from speaking with the Education Department, or from registering for the exam, and there was ample time to do so in advance of the cutoff. Plaintiff offers no explanation for her own delay. Instead, she lays the blame upon Fresenius, based on the vague statements of its employees, whom Plaintiff knew did not work for the Education Department (*i.e.*, the department responsible for assisting employees with their questions about dialysis certification). *See, e.g.*, Pl. Dep., ECF No. 16-1 at PageID #: 150, page 122 (When asked if the regional manager was in any way affiliated with Fresenius's Education Department, Plaintiff

10

(1:14CV02769)

unequivocally answered, "no."); *Id.* at PageID #: 150–51, pages 125–26 (Plaintiff admits that she knew how to contact the Education Department, and had spoken with an education coordinator from the Department on a prior occasion).

>Additionally, Plaintiff cannot establish the requisite causal connection.  To do so, she would need to prove a close temporal proximity between Fresenius learning of the pregnancy (or Plaintiff taking leaving) and her termination, or by showing that another similarly situated employee was treated more favorably.  *See Huffman v. Speedway, LLC*, 21 F.Supp.3d 872, 877 (E.D. Mich. 2014).  Indisputably, more than eight months passed between Plaintiff's return from pregnancy leave and her termination, and more than one year passed between the alleged discriminatory remarks made by Fresenius's employees and Plaintiff's termination.  *See* Reply, ECF No. 20 at PageID #: 258.  Under these facts, Plaintiff cannot demonstrate that there is a close temporal proximity between the events that would establish a nexus.  *See Lindsay v. Yates*, 578 F.3d 407, 418–19 (6th Cir. 2009) ("Where the nexus is not 'very close,' we have declined to find a causal connection based on the timing alone.").  And, Plaintiff has not shown that she was treated less favorably than other similarly situated employees.  *See* Def. Misley Aff., ECF No. 16-3 at PageID #: 211 ¶¶ 3–5 (Between 2012 and 2014, Fresenius hired four Patient Care Technicians, other than Plaintiff, whom Fresenius ultimately terminated for failure to obtain or maintain their Ohio dialysis technician certification.  There is no evidence in the record that any of those individuals took any type of medical leave prior to their termination.).  Plaintiff has not established a nexus between her pregnancy and the termination.

(1:14CV02769)

Finally, even assuming Plaintiff could make out a *prima facie* case of pregnancy discrimination, Defendants have articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment—she was no longer certified for the position. And, for the foregoing reasons, the record does not support a finding that Defendants' explanation was a pretext for discrimination. See *Asmo v. Keane, Inc.*, 471 F.3d 588, 592 (6th Cir. 2006) ("If the employee is able to present [the *prima facie*] case, then the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for its adverse employment decision. If the employer is able to do so, the burden shifts back to the employee, who, in order to defeat a motion for summary judgment, must show that the employer's articulated reason was a pretext for intentional discrimination.") (citations omitted).

Plaintiff has failed to show that there is a triable issue of fact as to her pregnancy discrimination claim.

### C. Count III: Wrongful Termination Based on Disability Discrimination

Count III alleges that Defendants discriminated against and terminated Plaintiff based on her disability or perceived disability, in violation of R.C. § 4112.02. Complaint, ECF No. 1 ¶¶ 71–72. To establish a *prima facie* case of disability discrimination under Ohio Rev. Code § 4112.02(A), a plaintiff must show that "'(1) the [plaintiff] had a disability; (2) the defendant took an adverse employment action, at least in part, because the plaintiff had the disability; and (3) the [plaintiff], while having a disability, could safely and substantially perform the essential

(1:14CV02769)

functions of the job in question.'" *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 792 (6th Cir. 2012) (citing *Wallace v. Mantych Metalworking*, 189 Ohio App.3d 25, 937 N.E.2d 177, 183 (2010)).

Defendant claims that Plaintiff cannot establish that, at the time of the termination, she was disabled or that she was qualified for her job as a dialysis technician.  Memorandum in Support, ECF No. 16 at PageID #: 111.  Plaintiff focuses on the alleged causal connection, arguing that there was "certainly a nexus [between] [her] actual or perceived disability and her termination."  Opposition, ECF No. 19 at PageID #: 249. She also argues, "Fresenius completely ignored its obligation to perform an interactive process to determine if [Plaintiff] could perform the essential functions of her position [with] or without an accommodation, and thus, [Plaintiff] has met her prima facie case of disability discrimination."  *Id.* at PageID #: 250.

Assuming *arguendo* that Plaintiff meets the definition of "disabled" within the meaning of R.C. § 4112.02, she still cannot establish the *prima facie* case.  Plaintiff repeatedly refers to her leave as "forced," and asserts it as evidence that her termination was the result of disability discrimination.  *See, e.g.*, Opposition, ECF No. 19 at PageID #: 250.  Yet, as Defendants state, "Plaintiff (1) affirmatively requested leave to begin on April 1, 2013; (2) [] arrived late several times [, and may have missed worked days,] in the first half of March 2013 []; and (3) was under medical restrictions as of April 10, 2013 that precluded her from performing the essential functions of the PCT position."  Reply, ECF No. 20 at PageID #: 260; Pl. Dep., ECF No. 16-1 at PageID #: 145, pages 102–05, and Page ID #: 162, page 170.  The sitting and lifting restrictions imposed by Plaintiff's physician severely diminished her capacity to satisfy the physical

(1:14CV02769)

requirements of the position.[1] In light of this, Defendants' actions were reasonable and appropriate, and do not create a genuine issue of material fact as to whether Plaintiff's termination was connected to her actual or perceived disability.

Moreover, as explained above in the analysis of Plaintiff's pregnancy discrimination claim, Plaintiff could not perform the functions of the job because she was not licensed to do so. This was a legitimate, non-discriminatory reason for Defendants' termination of Plaintiff's employment, and Plaintiff cannot show that the reason was a pretext for discrimination.

Plaintiff has failed to show that there is a triable issue of fact as to her disability discrimination claim.

### D. Count IV: Intentional Infliction of Emotional Distress

To establish a *prima facie* case for intentional infliction of emotional distress under Ohio law, a plaintiff must show that "'(1) the defendant intended to cause [her] serious emotional distress, (2) [] the defendant's conduct was extreme and outrageous, and (3) [] the defendant's

---

[1] *See* Opposition, ECF No. 19 at PageID #: 240 (Physician's restrictions were as follows: "(1) no lifting greater than 25 pounds; (2) no prolonged standing of more than 2 hours without a 15 minute break; (3) no work shift over 8 hours in a 24 hour period; and (4) no work over 40 hours in a 7 day period."); *See* Fresenius Medical Care Job Description, ECF No. 16-2 at PageID #: 187 ("The position provides direct patient care that regularly involves heavy lifting and moving of patients, and assisting with ambulation. Equipment aids and/or coworkers may provide assistance. This position requires frequent, prolonged periods of standing and the employee must be able to bend over. The employee may occasionally be required to move, with assistance, machines and equipment of up to 200 lbs., and may lift chemical and water solutions of up to 30 lbs. up as high as 5 feet. There is a two-person assist program and "material assist" devices for heavier items.").

(1:14CV02769)

conduct was the proximate cause of [her] serious emotional distress.'" *Burgess v. Fischer*, 735 F.3d 462, 480 (6th Cir. 2013) (quoting *Phung v. Waste Mgmt., Inc.*, 71 Ohio St.3d 408, 644 N.E.2d 286, 289 (1994)).  Count IV of the Complaint asserts that Defendants in engaged in such conduct, and caused Plaintiff to suffer "mental anguish of such a serious nature that no reasonable person could be expected to endure it." ECF No. 1 ¶¶ 75–77.

The Court's analysis of Plaintiff's IIED claim is necessarily abbreviated due to Plaintiff's anemic defense of the claim.  Plaintiff's entire opposition to Defendants' motion for summary judgment as to this issue is as follows: "Based on the foregoing reasons, [Plaintiff] has presented evidence creating a genuine issue of material fact as to whether she suffered emotional distress in this matter.  Moreover, [Defendant] Fresenius has failed to meet its burden under Civ. R. 56(C), to show that no genuine issues of material fact remain regarding Sloan's emotional distress claim." Opposition, ECF No. 19 at PageID #: 251.

Plaintiff does not point to, and the Court has not seen, any evidence in the record that creates a genuine issue of material fact as to whether Fresenius engaged in extreme and outrageous conduct for the purpose of causing Plaintiff emotional distress.  The alleged stray remarks of Fresenius's employees regarding Plaintiff's pregnancy simply do not rise to that level.  And Fresenius's decision to terminate Plaintiff's employment for her failure to meet the certification requirement—a requirement that was admittedly well known to her since the time of hire—cannot be said to constitute "extreme and outrageous" conduct.  Moreover, Plaintiff does not even attempt to show that she meets Ohio's high threshold for demonstrating that the remarks

(1:14CV02769)

caused her serious emotional distress. See *Flagg v. Staples the Office Superstore East, Inc.*, 138 F.Supp.3d 908, 920 (N.D. Ohio 2015) ("[T]o say that Ohio courts narrowly define 'extreme and outrageous' conduct would be something of an understatement." "Serious" emotional distress must be "severe and debilitating.") (citations omitted).

Viewing the evidence in the light most favorable to Plaintiff, the record does not support a finding that Plaintiff can satisfy the elements of the *prima facie* case for IIED. Plaintiff has failed to show that there is a triable issue of fact as to this claim.

### IV. Conclusion

For the foregoing reasons, there are no triable issues of fact in this case. Defendants' Motion for Summary Judgment, ECF No. 16, is granted.

IT IS SO ORDERED.

 September 20, 2016  /s/ Benita Y. Pearson
Date  Benita Y. Pearson
  United States District Judge